IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LEON JACKSON,                              ]
                                           ]
      Plaintiff,                       ]
                                           ]
vs.                                        ]  Case: 1:08-cv-01397
                                              Assigned To : Unassigned
                                              Assign. Date : 8/12/2008
FEDERAL BUREAU OF PRISONS,                    Description: Pro Se Gen. Civil
HARLEY LAPPIN - DIRECTOR, U.S.
MARSHAL'S SERVICE, JOHN DOE                ]
# 1 - U.S. MARSHAL Middle                  ]  SUMMONS
District of Georgia, sued in               ]  in a
their official capacities, for             ]  CIVIL
injunctive relief only, and                ]  COMPLAINT
JOHN DOE # 1, MARIA STILES -               ]
MD, (FNU) KAZI - MD, CRISP                 ]
COUNTY JAIL, DONNIE HARRALSON -            ]
Sheriff Crisp Co., DELWIN PARTAIN,         ]
JOHN DOES, # 2 thru 3,  JANE DOES,         ]
# 1 & 2, sued in their individual          ]
capacities for damages.                    ]
                                           ]
      Defendants.                      ]

TO THE ABOVE NAMED DEFENDANTS:

    YOU ARE HEREBY SUMMONED and required to serve upon the

Plaintiff, Leon Jackson, whose address is: Leon Jackson, # 91992-

020, F.C.I. Talladega, PMB 1000, Talladega, AL 35160, an answer to

the complaint which is herewith served upon you, within 60 days

after service of this summons upon you, exclusive of the day of

service.  If you fail to do so, judgment by default will be taken

against you for the relief demanded in the complaint.

      Clerk of the Court

      Dated: _____

**RECEIVED**

JUL 2 4 2008

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON JACKSON, | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | Case No. _____ |
| | ] | |
| FEDERAL BUREAU OF PRISONS, | ] | |
| HARLEY LAPPIN - DIRECTOR, U.S. | ] | |
| MARSHAL'S SERVICE, JOHN DOE | ] | |
| # 1 - U.S. MARSHAL Middle | ] | |
| District of Georgia, sued in | ] | |
| their official capacities, for | ] | |
| injunctive relief only, and | ] | |
| JOHN DOE # 1, MARIA STILES - | ] | |
| MD, (FNU) KAZI - MD, CRISP | ] | |
| COUNTY JAIL, DONNIE HARRALSON - | ] | |
| Sheriff Crisp Co., DELWIN PARTAIN, | ] | |
| JOHN DOES, # 2 thru 3, JANE DOES, | ] | |
| # 1 & 2, sued in their individual | ] | |
| capacities for damages. | ] | |
| | ] | "BIVENS" COMPLAINT |
| Defendants. | ] | with jury demand |

PRELIMINARY STATEMENT

This is a civil rights action filed by Leon Jackson ("Jackson"),
pro se, a federal prisoner, for damages and injunctive relief under
the U.S. Supreme Court's decision in <u>Bivens v. Six Unnamed Agents
of the Federal Bureau of Narcotics</u>, 402 U.S. 388 (1971), alleging
deliberate indifference to his serious medical needs, causing the
loss of vision in his left eye and partial loss of vision in his
right eye, in violation of the Eight Amendment to the United States
Constitution's prohibition against cruel and unusual punishment.

## I.    JURISDICTION AND VENUE

1.    This court has jurisdiction over Jackson's claim of violation of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343(a)(3).

2.    Jackson's claims for injunctive relief are authorized by 28 U.S.C. §§ 2282 & 2294, as well as Rule 65, Fed.R.Civ.P.

3.    The District of Columbia is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is one of the places where the decision was made to deny medical treatment, and it is the headquarters of two of the agencies involved.

## II.    PARTIES

A. - PLAINTIFF

4.    The Plaintiff, Leon Jackson ("Jackson"), is, and was at all times mentioned herein, a federal prisoner.  Jackson is currently confined in the Federal Correctional Institution ("F.C.I.") at Talladega, Alabama.

B. - DEFENDANTS

5.    Defendant Federal Bureau of Prisons ("BOP") is the federal agency charged with care and custody of prisoners sentenced under federal law.  The BOP is sued in its official capacity for injunctive relief only.

6.      Defendant Harley Lappin is the Director of the BOP. He is also responsible for reviewing central office appeals of administrative grievances filed by inmates in the BOP. He is sued in his official capacity for injunctive relief only.

7.      Defendant U.S. Marshal's Service is the federal agency charged with transportation, care and housing of federal inmates, transferred to court on federal writ. This defendant is responsible for ensuring that federal inmates receive adequate medical care for serious medical needs, while in the U.S. Marshal's custody. The U.S. Marshal's Service is sued in their official capacity of injunctive relief only.

8.      Defendant John Doe # 1, is the U.S. Marshal for the Middle District of Georgia. As such, it is his duty to ensure that contract facilities (facilities contracted to house federal inmates), in the Middle District of Georgia provide adequate medical care to federal prisoners housed in their facilities. He is sued in his official capacity for injunctive relief only, and he is sued in his individual capacity for damages.

9.      Defendant Maria Stiles is the Clinical Director at F.C.I. Talladega. She is the Chief physician at F.C.I. Talladega. It is her responsibility to provide medical care to inmates housed at F.C.I. Talladega, and ordering treatment by outside

-3-

specialists, if necessary, and ensuring those orders are
are followed.  She is sued in her individual capacity for
damages.

10.    Defendant John Doe # 2 is the optometrist to whom Jackson
was taken in Anniston, Alabama.  He evaluated Jackson's
eyes.  He started laser treatment on Jackson's right eye,
and recommended that an eye specialist further evaluate
and treat Jackson's left eye.  He ordered that Jackson be
returned in two weeks to complete the laser treatment on
Jackson's right eye.  He had a duty to see that his orders
were carried out, and that the laser treatment, which he
started was completed.  He is sued in his individual
capacity for damages.

11.    Defendant (FNU) Kazi is the ophthalmologist, located in
Talladega, Alabama, who evaluated Jackson's eyes on or
about July 7, 2006.  Defendant Kazi recommended immediate
laser treatment to save Jackson's eyesight.  He was Jackson's
treating physician, and, as such, had a duty to see that
Jackson was given the recommended treatment, or to file a
complaint with the medical review board, if he saw that
Jackson was not receiving proper treatment.  He is being
sued in his individual capacity for damages.

12.    Defendant Crisp County Jail, is a contract facility, that is,
a facility contracted with the U.S. Marshal's Service to
house federal prisoners.  As such, it has a duty to provide

-4-

proper medical care to all federal prisoners. It is sued in its official capacity for injunctive relief, and in its individual capacity for damages.

13. Defendant Donnie Harralson is the Sheriff of Crisp County. As such, he is the signator to the contract with the U.S. Marshal's Service to house federal prisoners in the Crisp County Jail. It is his duty to oversee the running of the jail and that the jail provides proper medical treatment to federal inmates housed there, as required by law and the terms of the contract. He is sued in his individual capacity for damages.

14. Defendant Delwin Partain is the Chief jailer at the Crisp County Jail, and, as such, it is his duty to make sure that all inmates receive proper medical treatment while incarcerated at the Crisp County Jail, for their serious medical needs. He is being sued in his individual capacity for damages.

15. Defendant John Doe # 3 is a white male, who works at or with the Crisp County Jail, in a medical capacity. He could be a physician, nurse or physician's assistant. He saw Jackson first when Jackson was at the Crisp County Jail. He told Jackson that they could not do daily sugar level checks of diabetics or send him to an eye doctor because of costs. He is being sued in his individual capacity for damages.

-5-

16.     Defendant Jane Doe # 1 is a black female, who works for or
        with the Crisp County Jail, in a medical capacity.  She
        saw Jackson on or about November of 2006.  She told Jackson
        that she would not put Jackson in to see an eye doctor
        because the jail didn't have the money to pay for it.  She
        was not the doctor, because she told Jackson she would let
        the doctor know of his problem.

17.     Defendant Jane Doe # 2 is a black female, who works for or
        with Crisp County Jail, in a medical capacity, as either
        a doctor, nurse or physician's assistant.  She saw Jackson
        in late November or early December 200y, while he was
        housed at the Crisp County Jail.  She told Jackson that
        while she agreed that he needed immediate medical atten-
        tion for his eyes, that Sheriff Harralson would not
        approve any outside doctor treating Jackson because of
        budgetary reasons.

18.     All defendants were acting under the color of federal law,
        as either agents or instrumentalities thereof, at all times
        material to this lawsuit.

                        III.   FACTS

19.     Jackson has diabetes mellitus, hypertension, diabetic and
        hypertensive nephropathy, and diabetic retinopathy.

20.     Jackson is currently incarcerated at the Federal Correc-
        tional Institution at Talladega, Alabama ("F.C.I.
        Talladega").

                            -6-

21.     Jackson was confined at F.C.I. Talladega, the Crisp County Jail and back at F.C.I. Talladega during the events described in this action.

22.     On or about May of 2006, Jackson was seen by optometrist Dr. Potter (contracted personnel) at F.C.I. Talladega for problems with his eyes related to his diabetes.

23.     Dr. Potter recommended that Jackson see a specialist for the proliferative diabetic retinopathy and vitreous hemorrhage in Jackson's left eye and diabetic retinopahty in his right eye.

24.     Jackson was taken to see another optometrist in Anniston, Alabama. This optometrist, identified as Defendant John Doe # 2, treated Jackson's right eye with a laser treatment. This treatment required two treatments with the laser to work. Defendant John Doe # 2 recommended that Jackson see a specialist for his left eye, but opined that the left eye was treatable. Defendant John Doe # 2 then scheduled Jackson for a second laser treatment for his right eye, for two weeks later. Defendant John Doe # 2 did not follow up on the second laser treatment, nor did he contact the medical or prison officials at F.C.I. Talladega to see why Jackson was not brought back for his second laser treatment.

25.     When he was not taken back to Defendant John Doe # 2 for the second laser treatment in two weeks as scheduled,

-7-

Jackson told Defendant Stiles that he was late for the appointment and his second laser treatment. Defendant Stiles told Jackson that he was not scheduled for a second treatment, that he didn't need a second treatment, and that he would be taken to see the specialist recommended by Defendant John Doe # 2 when the prison had the time and money to do so.

26. On or about July, 2006, Jackson was taken to see Defendant Kazi, an ophthalmologist. Defendant Kazi stated that Jackson needed immediate laser treatment on his left and right eyes, before they got any worse. He further stated that he believed that if Jackson was given immediate laser treatment his left eye could be saved. Defendant Kazi further stated that he believed that Defendant John Doe # 2 had not done a good job on the laser treatment of Jackson's right eye.

27. Jackson was returned to F.C.I. Talladega with no treatment by Defendant Kazi.

28. Jackson asked Defendant Stiles why he was not given any treatment by Dr. Kazi. Defendant Stiles told Jackson that the BOP had instituted new rules requiring an approval by the Utilization Review Committee ("URC") before any treatment by an outside medical specialist on an inmate.

29. On August 15, 2006, Jackson was approved by the URC for further laser treatment by Defendant Kazi.

-8-

30.  Jackson repeatedly wrote to medical and went to sick-call, in an attempt to get the needed medical treatment, from July of 2006 until October 2006, as his vision was deteriorating.

31.  Jackson spoke with Defendant Stiles and explained to her, on several occasions, that his vision was getting worse, and that he would be leaving on federal writ in October of 2006.

32.  Defendant Stiles assured Jackson that his treatment would be done before he left for the federal writ in October. She further told Jackson that he would be transferred to a federal "medical" facility as F.C.I. Talladega was not equipped for someone with his medical condition.

33.  On October 23, 2006, Jackson was taken by U.S. Marshals to the Crisp County Jail in Cordele, Georgia on federal writ.

34.  Jackson still had not been treated for his - serious medical condition.

35.  Jackson was assured his treatment would be given at the Crisp County Jail.

36.  Once he was at the Crisp County Jail, Jackson asked to be seen by medical staff.

-9-

37.   Approximately two days later he was seen by Defendant John
      Doe # 3, a male physician working at the Crisp County Jail.

38.   Defendant John Doe # 3, upon being told of Jackson's
      condition, explained that they did not do daily diabetes
      sugar level checks, and that Jackson could only have his
      sugar levels checked if and when the doctor was in.

39.   Jackson explained that he had been diagnosed with proli-
      ferate diabetic retinopath in his right eye.

40.   Jackson told Defendant John Doe # 3 that treatment had been
      started on his right eye but not completed.

41.   Defendant John Doe # 3 told Jackson there was nothing he
      could do.  He told Jackson that Sheriff Harralson would not
      approve further treatment, or for that matter, any treatment
      on Jackson's eyes, because of costs.

42.   In November of 2006, Jackson noticed his vision getting
      worse.  He filled out a written request to see the doctor.

43.   Jackson was taken to see a nurse instead.  This nurse,
      Jane Doe # 1, took Jackson's blood sugar level.  Jackson
      told Defendant Jane Doe # 1 that his vision was getting
      worse, including seeing black spots and patches of blind-
      ness.  Defendant Jane Doe # 1 told Jackson that there was
      nothing that could be done, as the Crisp County Jail's
      budget would not allow treatment.

-10-

44.    About 7 to 9 days later Jackson filled out another request
       to see the doctor, as his vision continued to deteriorate.

45.    A few days later, in late November or early December,
       Jackson saw a black female doctor, Defendant Jane Doe # 2.

46.    Defendant Jane Doe # 2, once Jackson explained his condi-
       tion, told Jackson that she would explain to the Crisp
       county Jail administrators about Jackson's condition.
       However, she told Jackson, she didn't believe the Sheriff,
       Defendant Harralson, would approve any treatment due to
       costs associated therewith.

47.    The next day, Jackson wrote letters to Defendants Harralson
       and Partain, explaining his condition and requesting
       treatment.

48.    Jackson received no response to either letter for over one
       week, so he wrote the U.S. Marshal's Office in Macon,
       Georgia.  He addressed the letter to the U.S. Marshal for
       the Middle District of Georgia, Defendant John Doe # 1.

49.    Jackson did not receive any response to his letter to
       Defendant John Doe # 1.  However, because it was Christmas
       time, Jackson waited until after the first of January, 2007,
       to contact his attorney.

50.    In January of 2007, Jackson contacted his attorney, Charles
       E. Cox, Jr., and told him of his medical condition, the

-11-

jail's response (or lack thereof), and the failure of the U.S. Marshal to respond to his letter.

51.    Attorney Cox told Jackson he would contact the U.S. Marshal to see what could be done.

52.    A week or so later, attorney Cox, told Jackson that he had contacted someone at the U.S. Marshal's Office and was told there was nothing that could be done.  That there was no other place to move him in the area, and that they couldn't make the Crisp County Jail provide medical treatment.

53.    By this time Jackson had lost approximately 90% of the vision in his left eye (he could only see light).

54.    Jackson then wrote the Federal Bureau of Prisons office in Grand Prarie, TX, explaining his problem and requesting help.  He received no answer to this letter either.

55.    In late January, 2007, Jackson once again saw Defendant John Doe # 3, the doctor at the Crisp County Jail.

56.    Defendant John Doe # 3 told Jackson that Sheriff Harralson and Chief Delwin Partain were aware of Jackson's condition, but, due to budgetary reasons, Jackson would not receive any medical treatment for his serious medical needs.

57.    Jackson once again wrote to defendant Partain requesting medical treatment, or, at least, to speak with Defendant

Partain or Defendant Harralson.

58. Defendant Partain sent a jail sergent to inform Jackson that they did not have the funds to give him treatment, but that the would be leaving the Crisp County Jail soon.

59. The second week of March 2007, Jackson was returned to F.C.I. Talladega.

60. Other than being seen by the medical staff at the Crisp County Jail, who did nothing but examine Jackson's eyes, he received absolutely no treatment for his serious medical condition from October 23, 2006, until March 5, 2007, while confined at the Crisp County Jail.

61. Once he was returned to F.C.I. Talladega, Jackson went to sick-call and reported his condition to Defendant Stiles.

62. In April of 2007, Jackson once again saw optomotrist Dr. Potter at F.C.I. Talladega.

63. Dr. Potter examined Jackson's eyes and told Jackson that because he didn't receive treatment in time, he had permanently lost his vision in his left eye and the right eye was dangerously close to loss of vision.

64. Dr. Potter recommended Jackson see a specialist immediately to try to save the vision in his right eye.

65. In May of 2007, Jackson was taken to see the specilist, Defendant Kazi.

-13-

66.   Defendant Kazi told Jackson that due to lack of treatment and the time that had passed, there was nothing he could do to save the vision in Jackson's left eye.

67.   He told Jackson that he could save his right eye, but that Jackson would require extensive treatment, and that he could still lose partial vision in the right eye.

68.   Jackson submitted an institution grievance ("BP-9") to the warden of F.C.I. Talladega complaining of the deliberate indifference to his serious medical needs, causing loss of vision in his left eye.

69.   The warden denied the grievance.

70.   Jackson appealed to the regional office of the BOP.

71.   This appeal was denied.

72.   Jackson appealed the denial of his regional office appeal to the central office of the BOP.

73.   Harley Lappin denied his central office appeal.

   IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

74.   Jackson has exhausted all available administrative remedies as to all issues contained herein.

## V.   LEGAL CLAIMS

75.     Jackson realleges and incorporates, by reference, para-
        graphs 1 thru 74 as though fully set forth herein.

76.     The actions of Defendants Federal Bureau of Prisons, Harley
        Lappin, U.S. Marshal's Service, John Doe # 1 in failing to
        properly train, and insure that inmates placed in medical
        treatment for serious medical needs, amounted to deliberate
        indifference, and caused, proximately caused or contri-
        buted to the loss of vision in Jackson's left eye, in
        violation of the Eighth Amendment to the U.S. Constitution's
        guarantee against cruel and unsual punishment.

77.     The failure of Defendant Stiles to get Jackson prompt
        medical treatment, to follow the recommendations of the
        opthalmologist, the failure to follow through on treatment
        once began, and, the failure to get Jackson to a specialist,
        once approved by the URC, but before he left on federal
        writ, constituted deliberate indifference to his serious
        medical needs, causing or contributing to the permanent
        loss of vision in his left eye, in violation of the Eighth
        Amendment to the U.S. Constitution's guarantee against
        cruel and unsual punishment.

78.     The actions of Defendant John Doe # 1 (the U.S. Marshal
        for the Middle District of Georgia), Defendant's
        Crisp County Jail, Donnie Harralson and  Delwin
        Partain in failing to respond to Jackson's repeated

medical need constituted to deliberate indifference thereto, and caused, proximately caused or contributed to the permanent loss of vision in his left eye, in violation of the Eighth Amendment to the U.S. Constitution's guarantee against cruel and unsual punishment.

79.     The actions of Defendant (FNU) Kazi, in failing to follow up on the course of treatment started on Jackson's eyes, failing to ensure that he was treated for the serious medical problem for which he identified and, failure to contact the BOP to see why Jackson's treatment was not continued, amounted to deliberate indifference to Jackson's serious medical needs, causing, proximately causing or contributing to Jackson's loss of vision in his left eye, in violation of the Eighth Amendment to the U.S. Constitution's prohibition against cruel and unsual punishment.

80.     The actions of Defendant John Doe # 2 (the optometrist in Anniston, Alabama who started the laser treatment), in failing to follow up on the treatment he started, in doing a poor job on the treatment he did do, and, in failing to question the BOP as to why Jackson was not brought back to complete his treatment, constituted deliberate indifference to Jackson's serious medical needs; causing, proximately causing and contributing to Jackson's permanent loss of vision in his left eye, in violation of the Eighth Amendment to the U.S. Constitution's guarantee against cruel and unsual punishment.

-16-

81.     The actions of Defendants John Doe # 3, and Jane Doe # 1 &
        2, in failing to treat, or to even recommend treatment for
        Jackson's serious medical condition, once it was brought to
        their attention, because of concerns of cost, constituted
        deliberate indifference to Jackson's serious medical needs;
        causing, proximately causing, and contributing to Jackson's
        permanent loss of vision in his left eye, in violation of
        the Eighth Amendment of the U.S. Constitution's prohibition
        against cruel and unsual punishment.

                    VI.    PRAYER FOR RELIEF

        WHEREFORE, Jackson respectfully prays this Honorable Court enter
a judgment granting Jackson:

82.     Injunctive relief against Defendants Federal Bureau of
        Prisons, Harley Lappin, U.S. Marshals Service and John Doe
        # 1, in the form of an order; that they provide proper
        medical treatment for inmates in their care and custody;
        that they respond, timely and properly to inmates' requests
        for medical treatment for serious medical conditions; and
        that they ensure all their subordinates follow such order.

83.     Injunctive relief against Defendants U.S. Marshal's Service
        and John Doe # 1 (the U.S. Marshal for the Middle District
        of Georgia), in the form of an order that they can no longer
        house federal inmates at the Crisp County Jail, unless they
        can show the Court that they have insured that such inmates
        will receive proper medical care regardless of costs.

-17-

84.   Compensatory damages against Defendants John Does # 1 thru
      3, Maria Stiles, (FNU) Kazi, Jane Does # 1 & 2, Crisp County
      Jail, Donnie Harralson, and Delwin Partain in the amount of
      $500,000.00 jointly and serverally.

85.   Punative damages against all defendants listed in paragraph
      84, in the amount to be set by the jury.

86.   Plaintiff's costs in this lawsuit.

87.   A jury trial on all issues triable by jury.

88.   Any additional relief this court deems just, proper and
      equitable.

Respectfully Submitted this 18 day of July , 2008.

Leon Jackson, 'pro se'
Reg. # 91992-020
Federal Correctional Institution
PMB 1000
Talladega, AL 35160

-18-